## CIRCUIT COURT OF THE CITY OF RICHMOND

Walter S. Segaloff

v.

Jacqueline D. Segaloff

April 3, 2002

Case No. HH-377-3

BY JUDGE T. J. MARKOW

The parties came on the defendant's motion that the plaintiff show cause why he should not be held in contempt for his failure to comply with the parties' property settlement agreement and evidence was presented and argument was heard.

A final decree of divorce which incorporated the property settlement agreement was entered on May 23, 1996. At issue is a provision of the property settlement agreement which provides for the division of any proceeds from the sale of the plaintiff's stock in Chesapeake Foods, Inc.

During the marriage, in 1984, plaintiff purchased, for the price of $2,440.00, 244 shares of Chesapeake Foods, Inc. Chesapeake Foods was organized to own and operate restaurants. The corporation began with one restaurant and at the time of sale in March 2000 it owned fifteen restaurants. Plaintiff received $267,337 for his shares. This is a dispute over what portion of the sales proceeds should be paid to the defendant.

Defendant claims that she should receive $50,038 plus interest and attorney's fees. Plaintiff claims that defendant is only entitled to $5,976. Each party relies on Paragraph 21 of the property settlement agreement which provides:

> In the event that husband sells his 244 share block of stock in Chesapeake Foods, Inc., or any portion thereof, and such sale results in *a net profit after* tax, after returns of prorated capital investment

and any prorated costs and expenses with the transfer, and any recapture, if applicable, then in such event, husband will pay to wife one-third (1/3) of *his profit* within 60 days of said sale.

(Emphasis added.)

Plaintiff says that, over the years, the company plowed profits back into the business to achieve growth. As the company was a Sub-Chapter S Corporation for tax purposes, annual profits were allocated amongst the shareholders as taxable income. Each shareholder received dividends in an amount sufficient to pay the taxes on that income.

In determining the income taxes due on plaintiff's sales proceeds, his share of the annual profits of the company was added to his initial investment of $2,440.00 to arrive at his "adjusted basis" in the stock. The tax due was based on the difference between the sales proceeds and plaintiff's adjusted basis. He claims that that same calculation is the only appropriate way to determine his "net profit" for purpose of distribution to the defendant.

Defendant argues that profit and the determination of taxable income have nothing to do with each other and that her distribution should be based solely on the difference between the sales proceeds less the initial investment of $2,440.00.

This decision is based solely upon the interpretations of Paragraph 21 of the property settlement agreement. The language of Paragraph 21 should be given its plain meaning. Both agree that "net profit" in this property settlement agreement means the difference between the proceeds and the plaintiff's investment less expenses and taxes related to the sale. Their dispute is how plaintiff's investment is determined.

The court finds that plaintiff's investment was the $2,440.00 and does not include the annual undistributed earnings. Plaintiff had no control over the distribution of corporate earnings. He owned only 2.44% of the stock. He was not a director. The fact that 2.44% of the annual corporate earnings were attributed to him as taxable income is a function of tax law provided to shareholders of close corporations to avoid double taxation. The retained earnings were corporate reinvestments and not shareholder investments.

Plaintiff's expert witness, a certified public accountant, testified that profit is determined by deducting plaintiff's "capital" from the sales proceeds. He further states that "capital" and "basis" are the same. Assuming that to be true, however, leads to the same conclusion reached by the defendant.

The term "basis" is an income tax statutory term. See 26 U.S.C. § 1012, which provides "the basis of property shall be the cost of such property. . . ." The "property" here is the 244 shares of stock. Plaintiff's cost of the stock was $2,440.00.

A more accurate analysis of plaintiff's position is that his profit is based on the difference between his sales proceeds and his "adjusted basis." Nowhere in Paragraph 21 of the property settlement agreement is that term mentioned. Additionally, "adjusted basis" is another statutory taxation term and was not a part of the determination of "net profit" mentioned in Paragraph 21.

Plaintiff also argues that the "net profit after tax" language in Paragraph 21 means that all taxes paid on corporate earnings must be deducted to determine net profits.

The court disagrees. The "after tax" language most logically refers to the taxes associated with the sale of the stock and not all taxes attributed to ownership.

Defendant's share of the net profit is $86,829. She has received $36,791. Defendant is entitled to the difference or $50,038.

Finally, defendant requests an award of attorney's fees as provided in the property settlement agreement plus interest. The court finds that both are due.

Plaintiff was to have paid defendant within sixty days of the sale of his shares. He paid a portion, $36,791, thirteen months later. Plaintiff owes interest on the total owed for thirteen months plus interest on the balance until payment. The total interest due through February 27, 2002, is $11,652.

The property settlement agreement provides that the prevailing party to any action to enforce the property settlement agreement will receive "any costs" incurred in that action. Defendant requests payment of legal fees of $10,377, expert witness fees of $1,998, and a fee of $1,275 she paid to a former accountant who was also the accountant for plaintiff. The court awards each of these fees except that to the former accountant of $1,275.

It is therefore ordered that judgment is awarded the defendant, Jacqueline D. Segaloff, against the plaintiff, Walter S. Segaloff, for $74,065 plus interest at the judgment rate from February 27, 2002, until paid, plus her court costs. The plaintiff's objections are noted. There remaining nothing further to be done, the clerk shall place this file among the ended causes.